**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECITUCT**

| | | |
|---|---|---|
| LAJEUNESSE, CARL A. ET AL | : | |
|   plaintiff, | : | |
| | : | |
| V. | : | No. 3:16-cv-00937 AVC |
| | : | |
| ALLSTATE INSURANCE COMPANY | : | |
|   defendant | : | |
| | : | |

<u>**RULING ON THE DEFENDANTS MOTION TO DISMISS**</u>

This is one of several current actions for damages in connection with homeowner insurance claims regarding coverage for concrete decay. The plaintiffs, Carl LaJeunesse and Florence LaJeunesse, allege that the defendant, Allstate Insurance Company (hereinafter "Allstate"), breached their homeowners insurance contract ("Subject Policy") with the plaintiffs by failing to indemnify them for a covered loss. The plaintiffs bring the present action pursuant to the Connecticut Unfair Trade Practice Act ("CUTPA"), Conn. Gen.Stat. §42-110a et seq., the Connecticut Unfair Insurance Practice Act ("CUIPA"), Conn. Gen.Stat. §38a-816(6), as well as common law tenets concerning breach of contract and breach of the covenant of good faith and fair dealing.

Allstate filed the present motion to dismiss all counts, which includes count one (breach of contract), count two (breach of the covenant of good faith and fair dealing), and count three

(breach of CUTPA/CUIPA), pursuant to Federal Rule of Civil Procedure 12(b)(6), on that grounds that Mr. and Mrs. LaJeunesse have failed to state a claim upon which relief may be granted.

The issues presented are: 1) whether the Allstate breached its insurance contract with the plaintiffs when it failed to indemnify them for an allegedly covered loss under the Subject Policy; 2) whether Allstate's failure to indemnify Mr. and Mrs. LaJeunesse under the Subject Policy constituted an act of bad faith; and 3) whether the failure to indemnify the plaintiffs under the Subject Policy constituted an unfair trade practice under CUTPA and CUIPA.

The court concludes: 1) Allstate did not have a duty to indemnify Mr. and Mrs. LaJeunesse for their loss because it was not covered by the Subject Policy; 2) because Allstate correctly denied the claim under the Subject Policy, the complaint fails to state a claim for bad faith; and 3) because Allstate correctly denied the claim under the Subject Policy, the complaint fails to state a claim for a violation of CUTPA and CUIPA.

For the reasons hereinafter set forth, Allstate's motion to dismiss is GRANTED.

## FACTS

An examination of the complaint reveals the following facts:

The plaintiffs are a married couple who reside at 117 Satari Drive, Coventry, CT 06238. Allstate is an insurance company incorporated under the laws of the State of Illinois and has a principal place of business at 3075 Sanders Road, Suite H1A, Northbrook, Illinois. At all times relevant to the complaint, Allstate provided homeowners insurance coverage to Mr. and Mrs. LaJeunesse for their home at Satari Drive.

Over time, the plaintiffs noticed a series of horizontal and vertical cracks in the basement walls of their home. On or around August 18, 2015, they investigated the condition and enlisted the assistance of a professional structural engineer. The engineer notified Mr. and Mrs. LaJeunesse that the cracks were due to a chemical reaction known commonly as Alkali-Silica-Reaction ("ASR"). ASR occurs when alkali aggregate and silica mix with other reactive elements.

It is unclear when exactly Mr. and Mrs. LaJeunesse first learned of the cracking, however they claim to have viewed the progression of the cracking "over time." On Septmeber 5, 2015, they subsequently notified Allstate of their loss under the Subject Policy and filed a claim. On February 25, 2016, Allstate's claims representative denied their claim by letter, stating that the policy did not afford coverage for concrete deterioration.

Mr. and Mrs. LaJeunesse subsequently filed suit in state court. On June 15, 2016, Allstate removed the action to the district court. On October 17, 2016, Allstate filed the present motion to dismiss regarding all counts in the complaint.

### STANDARD

A court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to establish a claim upon which relief may be granted.  Such a motion "asses(es) the legal feasibility of the complaint, [it does] not . . . assay the weight of the evidence which might be offered in support thereof."  Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  When ruling on a 12(b)(6) motion, the court must "accept the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff."  Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court may consider only those "facts stated on the face of the complaint, in documents appended to the complaint or

4

incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

## DISCUSSION

### I.   Breach of Contract – Count One

Mr. and Mrs. LaJeunesse assert that during the relevant period, there was an enforceable homeowner insurance policy between themselves and Allstate, and that they performed under this contract according to its terms. Mr. and Mrs. LaJeunesse also allege that they have suffered damages as a result of Allstate's breach of contract due to its failure to indemnify them for a covered loss. Specifically, Mr. and Mrs. LaJeunesse argue that the policy is silent as to the underlying chemical reaction and, therefore, the Subject Policy does not expressly exclude it from coverage.

Allstate does not dispute the presence of an enforceable homeowners policy, but rather disputes the sufficiency of the allegations regarding the breach of contract claim. Specifically, Allstate argues that Mr. and Mrs. LaJeunesse have not alleged facts sufficient to support a breach of contract because the damage alleged to exist in their basement is not covered under the Subject Policy.

A breach of contract requires the creation of an agreement, performance by one party, breach of the agreement by the other

party, and resulting damages to the nonbreaching party. Meyers
v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., 311 Conn.
282, 291, 87 A.3d 534 (2014). Interpretation of an insurance
contract "involves a determination of the intent of the parties
as expressed by the language of the policy." Hartford Cas. Ins.
Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 463, 876
A.2d 1139 (2005). "[P]rovisions in insurance contracts must be
construed as laymen would understand [them] and not according to
the interpretation of sophisticated underwriters[,] and ... the
policyholder's expectations should be protected as long as they
are objectively reasonable from the layman's point of
view." Vermont Mut. Ins. Co. v. Walukiewicz, 290 Conn. 582, 592,
966 A.2d 672 (2009).

Where the terms of an insurance policy are plain and
unambiguous, the language is to be interpreted according to its
natural and ordinary meaning. Peerless Ins. Co. v. Gonzalez, 241
Conn. 476, 482, 697 A.2d 680 (1997). Where the language of a
contract is unambiguous, a court "must give the contract effect
according to its terms." Harbour Pointe, 300 Conn. 254,
260(quoting Cantonbury Heights Condominium Ass'n Inc. v. Local
Land Dev., LLC, 273 Conn. 724, 734-35 (2005)). A contract is
unambiguous when "its language is clear and conveys a definite
and precise intent.... The court will not torture words to
impart ambiguity where ordinary meaning leaves no room for

ambiguity." Id. "[T]he mere fact that the parties advance
different interpretations of the language in question does not
necessitate a conclusion that the language is ambiguous." Id.

However, language in a contract is ambiguous if it is
susceptible to more than one reasonable interpretation. Poole v.
City of Waterbury, 266 Conn. 68, 88, 831 A.2d 211 (2003).
Ambiguous language in an insurance contract is construed against
the drafter of the policy, i.e., the insurance
company. See Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co. of
Illinois, 247 Conn. 801, 806, 724 A.2d 1117 (1999); Karas v.
Liberty Ins. Corp., 3:13-CV-01836 (SRU), 33 F. Supp.3d 110, 114-
15, 2014 WL 3579524, at 2 (D. Conn. July 21, 2014); Bacewicz v.
NGM Ins. Co., 3:08-CV-1530 (JCH), 2010 WL 3023882, at 3 (D.
Conn. Aug. 2, 2010).

As a threshold matter, Section 12, the so called "collapse"
provision of the Subject Policy, is the relevant provision with
regard to the breach of contract claim. Mr. and Mrs. LaJeunesse
specifically alleged coverage under this section of the Subject
Policy. Because the cracking in the basement walls that will
ultimately impair the walls' structural integrity, and thus
"collapse", Section 12 is the provision at issue. See Beach v.
Middlesex Mut. Assur. Co., Beach, 205 Conn. 246, 251(1987)
("'[C]ollapse' encompasses a catastrophic breakdown . . .
[as][well] [as] breakdown or loss of structural strength . . .

7

.". In relevant part, Section 12 requires that a collapse be "a sudden and accidental direct physical loss."

Mr. and Mrs. LaJeunesse argue that the underlying chemical reaction causing the decay constituted a sudden collapse and, therefore, meets the requirements of the Subject Policy provision, despite the fact that they have acknowledged the degenerative effects of the defect over time.

Construing the facts liberally and in the plaintiffs' favor, the court is presented with the question of whether the term "sudden" is in any way ambiguous within the Subject Policy. The court must determine whether a reasonable person could believe that a chemical reaction, slowly diminishing the structural integrity of a basement wall, could be considered "sudden" so as to meet the minimum pleading requirements set out in Twombly and Iqbal.

Merriam-Webster defines "sudden" as: "a) happening or coming unexpectedly; b) changing angle or character all at once; c) marked by or manifesting abruptness or haste; or d) made or brought about in a short time."[1]

In Metsack v. Liberty Mutual Fire Insurance Company, 2017 WL 706599 (D. Conn. 2017), the court determined that the

---

[1] *Sudden* Definition, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/sudden?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

inclusion of the term "sudden" in the "collapse" provision of
the plaintiff's homeowners policy, by its natural and ordinary
meaning, did not impart an ambiguity into the provision. Id. The
court distinguished prior decisions regarding policies that did
not include the term "sudden" in their collapse provisions.[2]
Similarly here, the court concludes that the inclusion of the
term "sudden" does not impart an ambiguity within the "collapse"
provision of the Subject Policy.

By any reasonable interpretation, a contract provision
requiring a "sudden" collapse in order to trigger coverage,
would not include a barely perceivable chemical reaction that
slowly reduces the structural integrity of concrete over a
period of years. In this case, the "[p]laintiff cannot avoid the
fact that their basement walls are still standing" Alexander
2017 WL 188134, at 2 (D. Conn. 2017), and they noticed the
cracks in their basement walls over time.[3]

Beyond the bare assertion that a chemical reaction has
caused a sudden and direct physical loss to their home, Mr. and

---

[2] Metsack v. Liberty Mutual Fire Insurance Company, 2017 WL 706599, at 7 (D.
Conn. 2017)("While Beach and the numerous JJ Mottes concrete cases that have
been heard in this district have held that a collapse need not be "sudden" to
be covered, none of the [previous] policies evaluated included the word
"sudden" within their "collapse" provisions.").

[3] Hidden decay and damage to a building's structure caused by latent defects,
such as defective concrete, can cause a collapse that an insured would
certainly perceive as "sudden," if the decay were truly hidden from the
insured's view. See Alexander v. General Insurance Company of America, 2017
WL 188134 (D. Conn. 2017); See Metsack v. Liberty Mutual Fire Insurance
Company, 2017 WL 706599, at 7 (D. Conn. 2017).

Mrs. LaJeunesse have provided no support for the claim that the loss was, in fact, "sudden." At present, the parties do not dispute that the plaintiffs' basement walls continue to slowly deteriorate as the result of a chemical reaction in the concrete. It is also undisputed that the effects on the compromised structure were observable to the homeowners over time, prior to their claim and the present action. By any ordinary or conventional understanding, the basement walls have not, in fact, "suddenly" collapsed.

Accordingly, the court finds that Allstate correctly denied Mr. and Mrs. LaJeunesse's claimed loss because that loss was not "sudden" under the express terms of the Subject Policy. Therefore, Allstate's motion to dismiss count one of the complaint, alleging breach of contract, is GRANTED.

## II. <u>Breach of the Duty of Good Faith and Fair Dealing – Count Two</u>

Mr. and Mrs. LaJeunesse argue that Allstate wrongfully denied a covered loss under the Subject Policy. Specifically, Allstate relied on an industry wide data sharing network, the Insurance Service Office ("ISO"), to determine whether the loss was covered. Mr. and Mrs. LaJeunesse state that Allstate's interpretation of the Subject Policy provisions was willful and malicious, and done in an attempt to deny a covered benefit

under the Subject Policy, and, therefore, constitutes an act of
bad faith.

    Allstate responds that the bad faith claim is tied to the
success of their underlying breach of contract claim, and must
fail because the loss at issue was not covered by the Subject
Policy. Allstate argues that Mr. and Mrs. LaJeunesse have failed
to plead sufficient facts to support their bad faith claim.

    The "duty of good faith and fair dealing is a covenant
implied into a contract or contractual relationship." De La
Concha of Hartford, Inc., 269 Conn. 424, (2004) (quoting Magnan
v. Anaconda Industries, Inc., 193, 558, 566 (1984)).  The
covenant of good faith and fair dealing "presupposes that the
terms and purposes of the contract are agreed upon by the
parties" and that the core of the dispute is a "party's
discretionary application or interpretation of a contract term."
Celentano v. Oaks Condominium Assn., 265 Conn. 617 (2003). In
order to constitute a breach of the covenant of good faith and
fair dealing, "the acts by which a defendant allegedly impedes
the plaintiff's right to receive benefits that he or she
reasonably expected to receive under the contract must have been
taken in bad faith." Alexandru v. Strong, 81 Conn. App. 68, 80-
81 (2004).

    To establish a claim for breach of the duty of good faith
and fair dealing, a claimant must show that a defendant

11

"neglect[ed] or refus[ed] to fulfill some duty or some contractual obligation . . . prompted by . . . some interested or sinister motive . . . . Bad faith means more than mere negligence; it involves a dishonest purpose." Habetz v. Condon, 224 Conn. 231, 237 (1992).

The Connecticut Supreme Court has recognized that, "because the covenant of good faith and fair dealing only requires that neither party to a contract do anything that will injure the right of the other to receive the benefits of the agreement, it is not implicated by conduct that does not impair contractual rights." Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 795 (2013) (citation, internal quotation marks, and brackets omitted). Unless there is an alleged failure to provide a contractually mandated benefit, there is no viable bad faith claim. Id.

Put simply, "[t]he implied duty of good faith and fair dealing is 'a purely instrumental duty intended to protect insureds' rights to receive their policy benefits." Id. at 796–97 (quoting D. Richmond, "Bad Insurance Bad Faith Law," 39 Tort Trial & Ins. Prac. L.J. 1, 18 (2003)); See also Tucker v. American Intern. Group, Inc., 2015 WL 403195, at 19 (D. Conn. 2015; Chorches v. Stewart Title Guar. Co., No. 3:13-CV-01182 (JAM), 2014 WL 4494240, at 5 (D. Conn. Sept. 10, 2014).

In the present case, the bad faith claim is premised on the wrongful denial of a covered loss under the Subject Policy. As previously discussed, the court finds Allstate did not breach the Subject Policy and correctly denied the plaintiffs' claim. Therefore, count two, fails to state a claim for bad faith. Allstate's motion to dismiss count two is GRANTED.

## III.   <u>Violation of the CUTPA and CUIPA – Count Three</u>

Mr. and Mrs. LaJeunesse argue that Allstate's membership with the ISO led Allstate to wrongfully deny their claimed loss based on the past claims of other participating ISO insurers. Thus, the denial constitutes a breach of CUTPA and CUIPA.

Allstate responds, similar to the bad faith claim, that the CUTPA/CUIPA claim is tied to the success of the underlying breach of contract claim and must fail because the Plaintiff's loss was not covered by the Subject Policy. Allstate also argues that Mr. and Mrs. LaJeunesse have failed to plead sufficient facts that could imply a general business practice, as required by CUTPA and CUIPA, because they only pled one potentially violative act.

To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged. <u>McCulloch v. Hartford Life Acc. Ins. Co.</u>, 363 F. Supp.2d 169, 181 (D. Conn. March 28, 2005). The CUIPA provision

relevant to this case prohibits unfair settlement practices. Conn. Gen.Stat. § 38a-816(6). "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice." Karas v. Liberty Ins. Corp., 33 F. Supp.3d 110, 117, 2014 WL 3579524, at 4 (citing Conn. Gen.Stat. § 38a-816(6); Bacewicz v. NGM Ins. Co., No. 3:08cv1530 (JCH), 2009 WL 1929098, at 3 (D. Conn. June 30, 2009); Quimby v. Kimberly Clark Corp., 28 Conn.App. 660, 672, 613 A.2d 838 (1992)).

It is clear that a "plaintiff must show more than a single act of insurance misconduct ... [or] isolated instances of unfair settlement practices" in order to successfully claim that the defendant has a general business practice of unfairly resolving disputes. Id.; see also Lees v. Middlesex Ins. Co., 229 Conn. 842, 849, 643 A.2d 1282 (1994)("[T]he legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct.... [T]he defendant's alleged improper conduct in the handling of a single insurance claim, without any evidence of misconduct ... in the processing of any other claim, does not rise to the level of a 'general business practice'...." (internal citations and quotation marks omitted)).

The Connecticut Supreme Court has recognized that failure of the underlying contract claim is fatal to the subsequent CUTPA/CUIPA claim. See Zulick v. Patrons Mut. Ins. Co., 949 A.2d 1084, 1091-92, 287 Conn. 367, 378 (Conn. 2008)("[b]ecause we have concluded that the defendant's interpretation of the policy's coverage limitation was correct, there can be no genuine issue of material fact as to whether the application of that interpretation as a general business practice constituted oppressive, unethical or unscrupulous conduct in violation of the statutes.").

In the present case, the CUTPA/CUIPA claim is based upon Allstate's failure to indemnify Mr. and Mrs. LaJeunesse for the claimed loss under the Subject Policy. As previously discussed, the court finds that since Allstate did not have a duty to indemnify Mr. and Mrs. LaJeunesse under the Subject Policy, Allstate cannot be said to have violated CUTPA or CUIPA. Based on the foregoing, Allstate's motion to dismiss count three alleging a violation of CUTPA and CUIPA, is GRANTED.

## CONCLUSION

Allstate's motion to dismiss (doc. no. 15) is GRANTED. It is so ordered this 30th day of August, 2017, at Hartford, Connecticut.

_____/s/_____
Alfred V. Covello,
United States District Judge